**SIGNED THIS: November 30, 2018**

_____
**William V. Altenberger
United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

IN RE:                                                                  IN PROCEEDINGS
                                                                              UNDER CHAPTER 13
THOMAS B. WILLIAMS
KARIN M. WILLIAMS
                                                                              CASE NO. 12-82275
    DEBTOR(S).

## OPINION

Before the Court is the Motion to Reopen Case filed by the Debtors, Thomas B. Williams and Karin M. Williams (jointly referred to as Debtors and individually as Thomas or Karin). The ultimate issue before the Court is whether the Court should reopen this chapter 13 case to allow the Debtors to amend their bankruptcy schedules to disclose Karin's lawsuit filed in District Court against Karin's former employer, Keystone Peer Review Organization (KEPRO) (lawsuit), where all their creditors have been paid and Debtors have been granted a discharge.

1

The facts giving rise to the motion to reopen are somewhat unusual and both the Debtors and KEPRO have different views as to the effect of the applicable provisions of the Bankruptcy Code. These two factors lead this Court to conclude that clarification is required as to the treatment of the lawsuit in the chapter 13 case, without going so far as to interfere with the lawsuit pending in District Court.

The Debtors filed a chapter 13 case on October 11, 2012. They disclosed their assets on their bankruptcy schedules, representing to the Court and their creditors that at the time of filing the chapter 13 case they had no assets other than those disclosed on their bankruptcy schedules. On December 6, 2012, the Court confirmed the Debtors' chapter 13 Plan, which called for monthly plan payments over the course of sixty (60) months. The Plan was completed in June 2017. All creditors were paid in full and on July 6, 2017, the Debtors were granted a discharge.

Karin's employment with KEPRO began in February of 2015 and ended in July of 2015. On July 15,2015 she filed a wage claim with the Illinois Department of Labor against KEPRO, alleging she was owed additional wages. On February 21, 2017, Karin filed the lawsuit in District Court against KEPRO. The lawsuit alleges she is entitled to damages for unpaid wages, back pay for nearly two years, punitive damages, and attorney's fees. The Debtors continued to make payments under the plan from the time Karin filed the wage claim to the time she filed the lawsuit and continued to do so until the plan was completed. Subsequent to the filing of Karin's wage claim and lawsuit, the Debtors never amended their bankruptcy schedules to disclose any additional assets, potential assets, or causes of action. Nor did they advise the chapter 13 Trustee (Trustee) of the wage claim and the lawsuit

On February 8, 2018, in the lawsuit, counsel for KEPRO took the deposition of Karin where it was discovered that the lawsuit was never disclosed to the Bankruptcy Court as an asset. Counsel for KEPRO advised Karin's attorney that the lawsuit should have been disclosed to the Bankruptcy Court. Three months later, on May 9, 2018, KEPRO filed a motion for summary judgment in the lawsuit. KEPRO argued that Karin's failure to disclose to the Bankruptcy Court the lawsuit as an asset of the bankruptcy estate meant she lacked standing to prosecute the lawsuit. Further, KEPRO argued that judicial estoppel prevented Karin from prosecuting the lawsuit. On May 24, 2018, the Debtors filed the instant motion to reopen the chapter 13 case for the purpose of disclosing the lawsuit as an asset of the bankruptcy estate.

As previously indicated, the motion before this Court involves whether to allow the chapter 13 case to be reopened. The reopening of a bankruptcy case is governed by § 350(b) of the Bankruptcy Code, 11 USC § 350(b), which provides as follows:

> A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The Debtors request their chapter 13 case be reopened " to accord relief to the debtors" and for further "cause." Under § 350 of the Bankruptcy Code, this Court possesses broad discretion as to whether to reopen a bankruptcy case to administer assets, to accord relief to the debtor, or for other cause. The Bankruptcy Code does not define "other cause." A decision to reopen a case for "other cause" lies within the discretion of the Bankruptcy Court. *See In re Thomas*, 204 F.2d 788, 791 (7th Cir.1953). When exercising discretion to reopen a case, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice." *In re Stark*, 717 F.2d 322, 323 (7th Cir.1983).

While it is true that no creditors will benefit from the reopening of this chapter 13 case to allow for the Debtors to amend their bankruptcy schedules to disclose the lawsuit, it is also true that no creditors will be prejudiced. The chapter 13 case has completed, all creditors were paid in full and a discharge had been entered. However, the failure to schedule the lawsuit in their chapter 13 case has created an issue in the lawsuit as to who has standing to pursue it

The Seventh Circuit Court of Appeals decision in *Rainey v. United Parcel, Inc.,* 466 Fed. Appx. 542 (2012), involved a fact pattern which, while not identical, is strikingly similar to the fact pattern in the case before this Court, and the decision is instructive for two reasons. First, the Seventh Circuit Court of Appeals, in holding that an employee could assert his claims even though they accrued during his bankruptcy and he failed to disclose them on his schedules, sanctioned the reopening of a closed chapter 13 case to allow a debtor to amend the schedules to include the claims that arose during the debtor's chapter 13 case. Second, the Court of Appeals discussed the impact the Bankruptcy Code has on a cause of action that arises during a chapter 13 case.

In the lawsuit, KEPRO argued that the cause of action belonged to the Trustee. However at the hearing on the Debtors' motion to reopen, the Trustee took the position that all creditors had been paid and the Trustee had no opposition to the Debtors' motion. The interests of the Debtors and the Trustee need to be clarified. Therefore the chapter 13 case should be reopened to allow the Debtors to correct the omission by filing amended schedules listing the lawsuit. The Trustee can then make his position a further matter of record. Once the interests of the Debtors and the Trustee in the lawsuit are clarified as a matter of record in the chapter 13 case, the

District Court can review the record in the chapter13 case and decide the issues before it in the lawsuit.

KEPRO did not argue that "cause" did not exist to reopen the chapter 13 case. Rather it argued first, that judicial estoppel prevented a reopening, and second, as a matter of "judicial economy" this Court should not decide the issue of whether to reopen the chapter 13 case.

KEPRO argues that the Debtors only filed the Motion to Reopen after being faced with the possibility of summary judgment in the lawsuit, and are attempting to take advantage of the bankruptcy process. Thus, the principle of judicial estoppel should prevent the reopening of this bankruptcy case. The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions. *New Hampshire v. Main*, 532 U.S. 742, 749 (2001). Judicial estoppel is a doctrine meant to protect the integrity of the judiciary, and therefore is an equitable doctrine to be invoked at the Court's discretion. *Id.* at 750. KEPRO has relied on cases with factual backgrounds much different than the one before this Court, and has failed to assert a persuasive argument that judicial estoppel should prevent the reopening of this chapter 13 case.

This Court adopts the approach taken by the court in *In re James*, 487 B.R. 587 (Bankr. N.D. Ga. 2013). In that chapter 13 case the debtor failed to amend her bankruptcy schedules to disclose a counterclaim that arose post-petition in a real property sale dispute. Like the Debtors in this case, the Chapter 13 Plan provided for 100% payment to her creditors. When all the creditors were paid in full, the debtor received a discharge and the case was closed. Three years after the conclusion of the Chapter 13 case, the opposing party moved for summary judgment on

the counterclaim under the theory of judicial estoppel. The opposing party argued that the failure to amend the bankruptcy schedules to include the counterclaim barred its consideration in another court. The debtor then filed a motion to reopen the bankruptcy case to disclose the counterclaims.

The court in *In re James* ultimately allowed the debtor to reopen her case to amend her bankruptcy schedules to disclose the counterclaim. The Court noted that there is no universal test for determining the applicability of the doctrine of judicial estoppel. However, it adopted the two- pronged approach utilized by the Eleventh Circuit Court of Appeals. First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. *Id*. at 592-93. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system. *Id*. Similar to the case before this Court, there was no contention as to the first prong, as it was admitted that the bankruptcy schedules were not amended to disclose the counterclaim. Instead, the case hinged upon the second prong of the test. The court was tasked with determining whether the failure to disclose the counterclaim was calculated to make a mockery of the judicial system. *Id*.

Following *James*, in applying the second prong of the test, this Court must first determine if the alleged inconsistently was calculated, and then must determine if it made a mockery of the judicial system. *Id.* at 593. For an inconsistency to be calculated, a level of intentionality on the part of the debtor is required. *Id*. The debtor's failure to satisfy its statutory disclosure duty is inadvertent when the debtor had no motive for concealment. *Id*.

Here, the Debtors had no motive to conceal the lawsuit against KEPRO from the Court. The Debtors' Chapter 13 Plan provided for full payment to their creditors. From the time the

cause of action arose, the Debtors continued to make all payments until the plan was completed and all creditors were paid in full. The Debtors made no calculated decision to conceal information from the Court.

Even if this Court were to assume the Debtors' actions were calculated, this Court would still have to find that the Debtors' actions were intended to make a mockery of the judicial system. The Debtors derived no benefit from failing to disclose the lawsuit on their bankruptcy schedules, and the Court can find no motive to conceal the lawsuit given that the Debtors' chapter 13 Plan provided for full repayment to all creditors. Further, no creditors will be prejudiced by the reopening of this case. The presence of this additional asset would have added nothing to the bankruptcy estate for the benefit of creditors, as creditors stood to be paid the same amount regardless of its presence. Therefore, the Debtors' actions were not intended to make a mockery of the judicial system. The doctrine of judicial estoppel is not applicable to this case.

Next, KEPRO argues that as a matter of "judicial economy" this Court should not decide the issue of whether to reopen the chapter 13 case. This Court finds that argument unpersuasive. There are no factual issues that require a hearing. There is only a legal issue involving the application of § 350 of the Bankruptcy Code. That issue has been raised, argued and briefed in this Court. As a matter of "judicial economy" it is better for this Court to decide the issue than to have the procedure repeated in the District Court for a ruling by it.

KEPRO finally argues that even if the Court reopens this chapter 13 case, Karin may not be able to avoid summary judgment, because the District Court will still have to rule upon their Motion for Summary Judgment filed in the lawsuit. This Court agrees, but does not see this is as

a reason to deny the Debtors' motion. There are two cases: 1) the chapter 13 case in bankruptcy and 2) the lawsuit in District Court. This Court is well aware that it can only decide the issue of whether the chapter 13 case should be reopened and that the issues of Karin's standing to bring the lawsuit and whether the doctrine of judicial estoppel apply to that lawsuit are to be determined by the District Court.

For the reasons stated above: 1.The Debtors' motion to reopen should be granted: 2. The Debtors should have 14 days to amend their schedules to include the employment cause of action and employment lawsuit: The Chapter 13 Trustee should have an additional 14 days to respond by making his position a further matter of record.

###

.